# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

STEVENISKI FRANK, SR.                       CIVIL ACTION NO. 17-1351

versus                                                      JUDGE DOUGHTY

CITY OF VILLE PLATTE, ET                MAG. JUDGE WHITEHURST
AL.

## SUPPLEMENTAL AND AMENDED
## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is the Rule 12 Motion to Dismiss, and alternatively, to Strike Plaintiff's Amended Complaint [Doc. 34] filed by defendants the City of Ville Platte, Chief of Police Neal Lartigue, and Mayor Jennifer Vidrine (collectively, "defendants"). The motion is opposed by the plaintiff, Steveniski Frank, Sr. ("Frank") [Doc. 36], and the defendants filed a Reply brief [Doc. 39]. For the following reasons, the undersigned recommends that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of the plaintiff's arrest and subsequent detention for nearly two and a half years for armed robbery. Specifically, the plaintiff, a resident of Ville Platte, alleges he was arrested on April 25, 2014 and charged with the armed robbery of a retail store. The record shows Mr. Frank's arrest was made

pursuant to a warrant, however, a copy of the warrant has not been provided to this Court in connection with the pending motion.  On April 28, 2014, Mr. Frank appeared in court for a 72 Hour Appointment of Counsel Hearing, at which time Jacob Fusilier was appointed as his attorney.  On June 4, 2014, the plaintiff was again present in court before Judge J. Larry Vidrine for an arraignment.  The plaintiff was represented at that time by attorney Alex Chapman, standing in for Mr. Fusilier.  Counsel waived the reading of the bill of information and entered a plea of not guilty.  The plaintiff was again in court on September 25, 2014, before Judge Thomas Fusilier.  At that time, the defendants moved to continue various discovery motions that were set for hearing on that day, and the motions were re-set on October 23, 2014.

A preliminary hearing was held on October 23, 2014, with the plaintiff present and represented by Mr. Fusilier.  The State offered the testimony of Detective Chatuse James of the Ville Platte Police Department ("VPPD"), and Mr. Frank offered the testimony of witnesses Sadie Frank and Stephanie Frank.  The evidence and argument presented to the state court at this hearing has not been presented to this Court in connection with the pending motion, and therefore, this Court has no knowledge of the factual basis upon which the court determined there was probable cause to bind Mr. Frank over for trial.  At the conclusion of the hearing, the court found probable cause existed, and the trial of the matter was set on March 9, 2015.

This Court emphasizes that the plaintiff's preliminary hearing took place <u>six months</u> after his arrest.

On October 29, 2014, Assistant District Attorney Trent Brignac filed a Bill of Particulars for Armed Robbery with a lesser included charge of theft.  The plaintiff alleges he was detained for two and a half years before the charges against him were dismissed and the District Attorney declined to indict him.  This Court has scoured the record to determine the date the plaintiff was released from custody, but has been unable to locate that information.

The plaintiff alleges that on the date he was arrested, he was told by a VPPD detective that "the detective knew" the plaintiff had not committed the crime for which he had been arrested.  The plaintiff also alleges he was held in jail even though VPPD detectives knew that the store owner had not identified the plaintiff as the person who had robbed the store.  The plaintiff alleges he has a distinctive scar in the area of his right eyebrow, which would have been visible to the store owner, even though the store owner stated the perpetrators were wearing masks.  The plaintiff further alleges that for the next two and a half years, the VPPD attempted to coerce him into give false and incriminating statements, and that he was told by the prosecuting attorney that the prosecution did not believe the plaintiff had committed the crime with which he had been charged.

3

Plaintiff filed the instant §1983 lawsuit in this Court on October 20, 2017, naming the City of Ville Platte, Chief Neal Lartigue, and Mayor Jennifer Vidrine as defendants.  The plaintiff alleges violations of his Fourth and Fourteenth rights to be free from unlawful arrest and detention for two a half years on charges that were ultimately dismissed.  The plaintiff alleges a pattern or practice on the part of the City of Ville Platte, through the VPPD, of illegally seizing and detaining innocent individuals for the sole purpose of investigating whether these individuals have been engaged in criminal activity, and alleges these "investigative holds" are used as a device to compel . . . individuals to provide information on others who may have engaged in criminal activity, even though those individuals may not have such information.  The plaintiff alleges the City of Ville Platte, Chief Lartigue, and Mayor Vidrine acted with deliberate indifference to the constitutional rights of the plaintiff by: (1) failing to establish, implement, and follow the correct constitutional policies, procedures, customs, and/or practices; (2) failing to properly select, supervise, train, control and review the activities of their agents, servants, employees, and police officers regarding their compliance with constitutional safeguards; (3) permitting their agents, servants, employees, and police officer to engage in unlawful and unconstitutional conduct alleged herein; and (4) exercising, at a minimum, deliberate indifference towards the constitutional protections afforded to the plaintiffs by

4

engaging in the unconstitutional practice and custom of illegal detention.

It is unclear whether Chief Lartigue and Mayor Vidrine are sued in their official capacities only, or in both their official and individual capacities. The plaintiff alleges Chief Lartigue was a policy-maker with respect to the detention practices of the VPPD and was responsible for the policies and practices that led to his unlawful detention. The plaintiff further alleges that Mayor Vidrine took a direct interest in overseeing the VPPD and was a policy-maker with respect to the detention practices of the VPPD.

In his Amended Complaint, the plaintiff also references an investigative report of the United State Department of Justice (the "DOJ Report"), in which the Justice Department "found reasonable cause to believe that the Ville Platte, Louisiana, Police Department (VPPD) and the Evangeline Parish Sheriff's Office (EPSO) engage in a pattern or practice of conduct that violates the Fourth Amendment to the Constitution." The DOJ Report goes on to state:

> The department found that VPPD and EPSO used a procedure the agencies called an "investigative hold" to detain individuals without probable cause during criminal investigations. As a result of this pattern or practice, people in Louisiana's Evangeline Parish have been arrested and placed in holding cells without probable cause. Often, individuals were in holding cells for several days at a time, where they were unable to contact family, friends or employers and had limited access to food

and personal items.[1]

Prior to filing the instant motion to dismiss, the defendants filed a motion to dismiss on December 21, 2017 [Doc. 5]. The plaintiff failed to timely oppose that motion, but requested and was granted additional time to file an opposition [Doc. 10]. The plaintiff filed an opposition brief on March 26, 2018 [Doc. 20], and the next day, filed a Motion for Leave to File an Amended Complaint [Doc. 21]. The defendants then filed a Reply brief in support of their original motion to dismiss [Doc. 30], and also filed a second Rule 12(b)(6) Motion to Dismiss [Doc. 27].

On July 13, 2018, the undersigned granted plaintiff's motion for leave to file an amended complaint [Doc. 31] and ordered that for the sake of clarity, both of the defendants' motions to dismiss should specifically address the allegations in the plaintiff's Amended Complaint and be consolidated into a single document [Doc. 33].

The defendants responded by filing the instant motion to dismiss on July 24, 2018, seeking dismissal of all of the plaintiff's claims on grounds that the fact that the plaintiff had the benefit of the legal process – that is, the fact that he was arrested pursuant to a warrant, was arraigned and appointed counsel, and had the benefit of

---

[1] The DOJ Report is readily available on the Department of Justice's website. United States Department of Justice, Civil Rights Division, *Investigation of the Ville Platte Police Department and the Evangeline Parish Sheriff's Office*, (December 19, 2016), https://www.justice.gov/opa/file/919436/download.

a probable cause hearing before a judge, who found probable cause to him over for trial – negates the possibility of a Fourth Amendment claim.  The defendants also argue the plaintiff's claim of unlawful arrest are time-barred; all individual liability claims against Chief Lartigue and Mayor Vidrine should be dismissed as the allegations are insufficient to establish supervisory liability or to overcome the defense of qualified immunity; all official capacity claims against Chief Lartigue and Mayor Vidrine should be dismissed because they are redundant of the municipal liability claims against the City; all claims of municipal liability against the City should be dismissed because the plaintiff has not pled sufficient facts to support a claim that the alleged constitutional violations were due to an official policy of the City; the claim for punitive damages against the City should be dismissed, as such damages are not available under the law; and the claims for punitive damages against Chief Lartigue and Mayor Vidrine in their individual or official capacities should be dismissed.  The defendants further urge this Court to dismiss any supplemental state law claims that may have been pled, to strike all allegations related to the alleged constitutional rights violations of third parties, and specifically, to strike all references to the Department of Justice's investigation into the VPPD's policy of using "investigative holds" as a police tool.

The undersigned will address each argument in turn.

## II. LEGAL STANDARDS AND ANALYSIS

### A.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the

speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

When deciding a motion to dismiss, the court is generally limited to matters contained within the Complaint, and attachments thereto.  As stated by the United States Court of Appeals for the Fifth Circuit in *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996):

> Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice. See Fed.R.Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

The commentators in Federal Practice and Procedure have noted:

> Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleading, matters of which the district court can take judicial notice, *and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.*

5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1366 (emphasis added).

9

In *In re Katrina Canal Breaches Consol. Lit.*, 533 F.Supp.2d 615, 632 (E.D.La. Jan. 30 2008), the court explained:

> Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and read determination by resort to resources whose accuracy cannot be questioned." In addressing the question of what constitutes an adjudicative fact, in the Advisory Committee Notes to that rule, citing to Professor Davis, A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 73 (1964), " 'When a court or an agency finds facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent—the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts.' "

(internal citations omitted).

Specifically, the Fifth Circuit has determined that courts may take judicial notice of governmental websites. *See, e.g., Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir.2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir.2005) (per curiam) (Fifth Circuit taking judicial notice of Texas agency's website); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 2007 WL 2421754, at *6 (10th Cir.Aug.28, 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.") (citations omitted); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir.2003) (taking judicial notice of information on

official government website pursuant to Rule 201).

Here, the undersigned takes judicial notice of the DOJ Report, which is readily available on the Department of Justice's website, is generally known within the territorial jurisdiction of this Court, and is not subject to reasonable dispute. Consequently, the DOJ Report is properly considered under the standards of Rule 12(b)(6), and it is recommended that the defendants' motion to strike that Report be denied.

### B.  Section 1983

United States Code Title 42, Section 1983, creates a cause of action for an individual whose constitutional rights are violated by a person acting under the color of state or federal law.  The purpose of §1983 is to deter "state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).  State actors may defend themselves by claiming they have qualified immunity for their actions, as long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

There is a heightened pleading standard for cases brought under §1983.  "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314,

11

323 (5th Cir. 2002). In discharging this burden the plaintiff must satisfy a two-prong test. *Id.* The plaintiff must allege that defendants committed a constitutional violation under current law, and that defendant's actions were objectively unreasonable "in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). For the law to be clearly established at the time of the action, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Thus, to state a Section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008), *citing Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000). A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. *James*, 535 F.3d at 373, *citing Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999). A supervisor is not personally liable for his subordinate's actions in which he had no involvement. *Id.* at 443–44.

## 1. The Fourth Amendment

The Supreme Court has held that "[t]he first inquiry in any §1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). As an initial matter, the undersigned notes that the plaintiff's claims are properly framed within the scope of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." In *Manuel v. City Joliet*, 137 S.Ct. 911 (2017), the Supreme Court addressed the question of whether alleged violations of improper "seizure" – by way of pre-trial detention – are more properly considered under the Fourth Amendment or the Fourteenth Amendment's due process clause, when probable cause has been found to justify holding the detainee over for trial. The *Manuel* court definitively held that alleged violations of improper seizure lie under the Fourth Amendment, even after a probable cause determination, to wit:

> As reflected in *Albright*'s tracking of *Gerstein*'s analysis, pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. *But it also can occur when legal process itself goes wrong — when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification.*

13

> *Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim — or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.*

137 S. Ct. 911, 918–19 (emphasis added). The Court went on:

> For that reason, and contrary to the Seventh Circuit's view, Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention. Consider again the facts alleged in this case. Police officers initially arrested Manuel without probable cause, based solely on his possession of pills that had field tested negative for an illegal substance. So (putting timeliness issues aside) Manuel could bring a claim for wrongful arrest under the Fourth Amendment. And the same is true (again, disregarding timeliness) as to a claim for wrongful detention—because Manuel's subsequent weeks in custody were also unsupported by probable cause, and so also constitutionally unreasonable. No evidence of Manuel's criminality had come to light in between the roadside arrest and the County Court proceeding initiating legal process; to the contrary, yet another test of Manuel's pills had come back negative in that period. All that the judge had before him were police fabrications about the pills' content. The judge's order holding Manuel for trial therefore lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights. Or put just a bit differently: Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime.

*Id.* at 919–20.

In the instant case, the plaintiff was arrested pursuant to a warrant, and was afforded the benefits of the legal process, including a 72 hour hearing at which he

was appointed counsel, and – six months later – a probable cause hearing, after which a judge determined there was probable cause to hold the defendant over for trial. The defendants strenuously argue that the fact that a judge determined there was probable cause – and that the defendant was afforded the benefits of the legal process – acts as a bar to pursuing a Fourth Amendment claim for improper seizure, on the basis of both his allegedly defective arrest and his allegedly defective detention. The defendants also argue the plaintiff "does not allege which agency arrested him, who the arresting officer was, where he was incarcerated during this 2 ½ year period, or how these defendants remained responsible for that incarceration, or the supposed delay in his prosecution,"[2] calling the foregoing fatal to alleging a constitutional deprivation.

Contrary to the defendants' argument, however, the plaintiff does indeed allege, albeit somewhat inartfully, that his arrest and detention were illegal, in that there was no probable cause to support either, despite the fact that probable cause was determined to exist both before the issuance of the warrant and by Judge Fusilier at the plaintiff's October 2014 probable cause hearing. The plaintiff alleges the owner of the store that was robbed stated the perpetrators were wearing ski masks and the store owner was therefore unable to see the face of the perpetrator. Regardless, the

---

[2] *See* defendants' Motion to Dismiss, Doc. 34-1, at p. 7.

plaintiff argues he has a distinctive scar in the area of his right eyebrow, which would have been visible even when wearing a ski mask. The plaintiff argues the store owner did not state the perpetrator had a scar. The plaintiff further argues that on the day he was arrested, a VPPD detective told him that the detective knew the plaintiff had not committed the crime for which he had been arrested, and he was later told by the prosecuting attorney that the prosecution did not believe the plaintiff had committed the crime for which he had been charged. The plaintiff argues that despite the foregoing, he was arrested, charged, and detained for two and a half years before the charges against him were dismissed. The plaintiff argues, in effect, that the legal process he was afforded was tainted.

Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000), *citing United States v. Wadley*, 59 F.3d 510, 512 (5th Cir.1995). *See also Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), *citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States*, 338 U.S. 160, 175—176, 69 S.Ct. 1302, 1310—1311, 93 L.Ed. 1879 (1949). The presence of probable cause is a mixed question of fact and law. *Id.* "This standard, like those for searches and

seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Gerstein*, 420 U.S. at 112.

While the defendants make much of the fact that the plaintiff was arrested pursuant to a warrant, and had a probable cause hearing at which a judge determined probable cause existed in this case, significantly, the defendants have not provided this Court with a copy of the arrest warrant or the application for the arrest warrant.[3] Furthermore, although the defendants argue who testified at the probable cause hearing, the undersigned has no knowledge concerning what evidence was presented to the judge for him to make his probable cause determination, only that he made one. Therefore, this Court is not able to assess the reasonableness of the probable cause determinations made, either prior to the arrest or at the time of the probable cause hearing. Without the foregoing information, this Court is unable to determine that the "totality of facts and circumstances within [the arresting] police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing [the] offense [of robbery]," and therefore, cannot determine whether the probable cause determinations made in this case were proper.

---

[3] The defendants have provided a booking card, which reflects that Mr. Frank was arrested on April 25, 2014 with reference to Warrant No. EPSO 031654, however, neither the application for the warrant nor the warrant itself were provided.

*Manuel* explicitly holds that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 S. Ct. 911, 920. Furthermore, this Court is bound to apply the Rule 12(b)(6) standard to the instant motion, that is, this Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. The plaintiff's claims are facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Considering the foregoing, insofar as the plaintiff is alleging there was no supported probable cause to (1) arrest him, and (2) detain him for a period of two and a half years, and that the legal process he was afforded was tainted, the plaintiff's claims properly fall under the Fourth Amendment. To the extent that any of the plaintiff's claims are pled under the Fourteenth Amendment, it is recommended that those claims be denied and dismissed with prejudice.

## **2. Claims Against Chief of Police Neal Lartigue and Mayor Vidrine**

### **i. Individual capacity claims**

It is unclear to the undersigned whether Chief Lartigue and Mayor Vidrine are sued in their individual capacities, their official capacities, or both. The plaintiff does not clearly allege the capacity of either Chief Lartigue or Mayor Vidrine in either his Complaint or Amended Complaint, and the defendants argue the plaintiff "never alleges that Chief Lartigue or Mayor Vidrine personally participated in any aspect of

18

Mr. Frank's arrest, detention, or any aspect of the criminal charges against him."[4] Defendants argue that to the extent Chief Lartigue and Mayor Vidrine have been sued in their individual capacities, they are entitled to qualified immunity.

To assert a claim against Chief Lartigue and Mayor Vidrine in their individual capacities, the plaintiff must "establish that the defendants were either personally involved in a constitutional deprivation or that their wrongful actions were causally connected to the constitutional deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Because a supervisory official cannot be vicariously liable for its subordinates under §1983, the supervisor is only liable if "(1) he affirmatively participates in the acts that cause the constitutional derivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 569 F.3d 440, 446 (5th Cir. 2011), *quoting Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2011). The plaintiffs must establish that the individual "personally implemented a deficient policy resulting in a constitutional violation." *Lineberry v. U.S.*, 436 Fed. Appx. 293, 295 (5th Cir. 2010).

Here, as indicated, the plaintiff has not alleged that either Chief Lartigue or Mayor Vidrine personally participated in any of the events giving rise to his claim. The defendants argue the plaintiff asserts the VPPD has an "unlawful detention policy" that the chief and mayor were responsible for, but that the plaintiff "does not

---

[4] *See* defendants' motion to dismiss, Doc. 34-1, at p. 13.

identify what that policy was or how it applied to [plaintiff's] situation."[5]  The

defendants argue the "investigative hold policy" is "of no moment since that policy

did not apply to [the plaintiff's] situation as he was arrested pursuant to a warrant and

the court process invoked [sic], and there was an independent determination of

probable cause by an independent intermediary."[6]

After a review of the Amended Complaint and the briefs of the parties, the

undersigned finds the defendants' argument with respect to Chief Lartigue and Mayor

are not persuasive.  In his Amended Complaint, the plaintiff alleges:

> 31.   Although there was no formal written policy relating to the
> investigative holds, Police Chief Lartigue developed a custom and
> practice of arresting people for purpose of investigative holds.
>
> 32.   Police Chief Lartigue ordered or at least encouraged the detec-
> tives and officers in the VPPD to arrest people without probable
> cause for purposes of investigative olds.
>
> 33.   Mayor Vidrine delegated the law enforcement function to Police
> Chief Lartigue; although she was not running the day-to-day
> affairs of the VPPD, she knew about the practice of arresting
> people without probable cause for purposes of investigative holds
> and encouraged the police chief and his officers to engage in this
> practice, or at least acquiesced in the practice.
>
> 34.   By April 2014, prior to plaintiff's arrest, Mayor Vidrine and
> Police Chief Lartigue knew that the above practice would result
> in the long imprisonment of numerous innocent people, resulting

---

[5] *See* defendants' memorandum, Doc. 34-1, at p. 13.

[6] *Id.*

in severe financial distress and emotional distress, and in implementing and/or failing to stop the practice, they acted with deliberate indifference.

35.    The mayor's and police chief's practice in ordering and encouraging the arrest of innocent persons and the investigative holds was the direct cause of plaintiff's wrongful arrest.[7]

Although at times inartfully pled, the allegations of the plaintiff is that, although he was afforded the benefits of the legal process in this matter, he was nevertheless arrested and detained without probable cause.   In his Amended Complaint, the plaintiff invokes the findings of the United States Department of Justice's "Investigation of the Ville Platte Police Department and the Evangeline Parish Sheriff's Office."  This Report, which was released on December 19, 2016, found that the VPPD, along with the Evangeline Parish Sheriff's Office, had been unconstitutionally using the police policy of "investigative holds" for decades.  In the introduction to the full report, the DOJ wrote:

> After engaging in a thorough investigation, the Department of Justice ("DOJ") concludes that there is reasonable cause to believe that both the Ville Platte, Louisiana Police Department ("VPPD") and the Evangeline Parish Sheriff's Office ("EPSO") have engaged in a pattern or practice of unconstitutional conduct.  Both VPPD and EPSO have arrested and held people in jail—without obtaining a warrant and without probable cause to believe that the detained individuals had committed a crime —in violation of the Fourth Amendment to the Constitution.  We have additional concerns that these unconstitutional holds have led to coerced confessions and improper criminal convictions. These findings reflect

---

[7] *See* plaintiff's Amended Complaint, Doc. 32, at ¶31-35.

the results of an investigation into both agencies, which have engaged in nearly identical practices within overlapping jurisdictional boundaries.

VPPD and EPSO have used these arrests, called "investigative holds," as a regular part of their criminal investigations, inducing people to provide information to officers under threat of continued wrongful incarceration.   The arrests include individuals suspected (without sufficient evidence) of committing crimes, as well as their family members and potential witnesses.  The individuals who are improperly arrested are strip-searched, placed in holding cells without beds, toilets, or showers, and denied communication with family members and loved ones.  Individuals are commonly detained for 72 hours or more without being provided an opportunity to contest their arrest and detention. Instead, they are held and questioned until they either provide information or the law enforcement agency determines that they do not have information related to a crime.  Indeed, we have concerns that some people may have confessed to crimes or provided information sought by EPSO and VPPD detectives, apparently to end this secret and indefinite confinement.

**The investigative hold practice is routine at EPSO and VPPD.  Both agencies acknowledged that they used holds to investigate criminal activity for as long as anyone at the agency can remember.**  The number of holds used in recent years is staggering.  Between 2012 and 2014, for example, EPSO initiated over 200 arrests where the only documented reason for arrest was an investigative hold.  In that same period, VPPD used the practice more than 700 times.  The number of holds by EPSO and VPPD is likely even higher; both agencies use such rudimentary arrest documentation systems that the total number of arrests for investigative hold purposes is likely underreported.[8]

---

[8] United States Department of Justice, Civil Rights Division, *Investigation of the Ville Platte Police Department and the Evangeline Parish Sheriff's Office*, (December 19, 2016),

The Report goes on to state:

**EPSO and VPPD lack adequate policies, training, data collection, and supervision to ensure that officers comply with constitutional requirements during criminal investigations.   These deficiencies perpetuate unconstitutional detention practices by failing to guide, document, and correct officer behavior.  This lack of guidance and supervision allowed the unconstitutional investigative hold practice to continue for decades.**

[ . . . ]

**For example, VPPD Chief Lartigue acknowledged to us that the investigative hold practice is unconstitutional.  Chief Lartigue also told us that the practice is now prohibited in VPPD policy, although VPPD has not promulgated new formal, written policies related to holds and other arrests.  Rather, the only documentation of this change is a one-page directive that was posted in the Ville Platte police station.  In addition to this directive, Chief Lartigue now requires officers to fill out a "probable cause affidavit" when they are booking someone into the City Jail.  The affidavit must be signed by the officer and "notarized" by a second officer.  The affidavit then gets attached to a warrant application to the criminal court judges, which may be sent via a recently installed electronic warrant application system.**

[ . . . ]

**These steps, however, are not enough to ensure that officers know their constitutional obligations.  Neither EPSO nor VPPD have formalized this new system through policies, procedures, and appropriate training.  Moreover, the agencies have given their officers only limited instruction regarding what constitutes probable cause for an arrest.  According to Chief Lartigue, after the new directive was issued, VPPD officers participated in a two-hour training during which he discussed the requirement that all suspects arrested without a warrant must be brought before a judge for a**

23

**probable cause determination within 48 hours of arrest. We applaud this training as a positive step, although there is no indication that officers were tested on the knowledge gained from the session.[9]**

Thus, the Report itself clearly states that Chief Lartigue and Mayor Vidrine knew about the policy of unconstitutional investigative holds and used such investigative holds in cases where police officers specifically lacked probable cause. The Report goes on to state that "VPPD [lacks] detailed policies or procedures governing how officers make arrests, book detainees in the local jails, or conduct interrogations. The lack of policy guidance results in officer confusion about each agency's procedures and constitutional requirements."[10]

Although the defendants argue that the results of the DOJ's investigation and report are inapplicable to support the claims of the plaintiff in this case because two findings of probable case were made (at both the arrest stage and the probable cause hearing stage), the plaintiff asserts that the procedures surrounding his arrest and detention were nevertheless flawed, or "tainted," and that he, in fact, was arrested and held without probable case. In essence, the plaintiff is alleging that the net effect of his arrest and detention was the same as if the illegal "investigative hold" policy employed by the VPPD for decades were still being used.

---

[9] *Id.*

[10] *Id.*

The inquiry before this Court on the question of whether the plaintiff states an individual liability claim against Chief Lartigue and Mayor Vidrine is whether these individuals "implemented unconstitutional policies that causally result in the constitutional injury." *Porter*, 569 F.3d at 446. The DOJ Report exhaustively details the unconstitutional practices employed by the VPPD for decades; makes clear that Chief Lartigue was aware of the practice and routinely employed it; makes clear that Mayor Vidrine knew about the existence of the policy; and discusses the VPPD's lack of training and oversight in the area of police arrests, the booking of detainees in local jails, and the conduction of interrogations. Under well-settled law, this Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). A plaintiff's claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. After consideration of the claims set forth in the Amended Complaint and the briefs of the parties, the undersigned concludes that the plaintiff has stated individual liability claims against both Chief Lartigue and Mayor Vidrine.

### ii.  Qualified immunity

The defendants further argue that Chief Lartigue and Mayor Vidrine, to the

extent they are sued in their individual capacities, are entitled to qualified immunity. The plaintiff does not address the issue of qualified immunity in his brief.

"The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir.2011), *quoting Pearson v. Callahan*, 555 U.S. 223 (2009). To determine whether a public official is entitled to qualified immunity, we inquire: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id*. (citing *Pearson*, 555 U.S. at 230–33).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lincoln v. Barnes*, 855 F.3d 297, 301 (5th Cir. 2017), *citing Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015), *quoting Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S.

658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotations and alteration omitted). This inquiry "does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (citations omitted); *see also Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (*en banc*) ("The sine qua non of the clearly-established inquiry is fair warning. Thus, we must ask not only whether courts have recognized the existence of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." (internal quotations and citations omitted). If a defendant asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Whittington v. Maxwell*, 455 F. App'x 450, 456 (5th Cir. 2011), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (*en banc*).

As the undersigned has already concluded that the plaintiff sufficiently alleged violations of his right to be free from being arrested and detained for a period of two and a half years without probable cause – even though he was arrested pursuant to a warrant and probable cause was found to exist at a hearing – the remaining question for qualified immunity purposes is whether those rights were clearly established. *See Lincoln v. Turner*, 874 F.3d 833, 848 (5th Cir. 2017) (where plaintiff survived Rule

27

12(b)(6) motion to dismiss her Fourth Amendment claim of unlawful detention, the court noted her claim could still be barred on the basis of qualified immunity, and considered the "remaining question" of whether the rights she alleged were violated were "clearly established.").

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Lincoln v. Turner*, 874 F.3d 833, 848 (5th Cir. 2017). Thus, the inquiry before the undersigned is "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411 (citations omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.2005) (citation omitted).

This Court is guided by the Fifth Circuit's decision in *Hinojosa v. Livingston*, 807 F.3d 657, 661 (5th Cir. 2015). In *Hinojosa*, Albert Hinojosa died of complications resulting from heatstroke while incarcerated in state custody. Hinojosa's mother sued several state agencies and included a Section 1983 claim against the jail facility and jail supervisors, which alleged that the conditions in which defendants housed Hinojosa posed a substantial risk of serious harm, and that defendants acted with deliberate indifference toward Hinojosa's health and safety

28

needs. *Hinojosa*, 807 F.3d at 661. Defendants moved to dismiss the §1983 claim against them on the basis of qualified immunity, arguing that as the top three security administrators of the facility in question were not personally responsible for — and did not personally participate in — any decisions regarding Hinojosa's housing or medical needs, and they did not violate clearly established law. *Id.*

After hearing argument on the motion, the district court orally denied it from the bench. In its later-issued written order explaining its reasoning, the district court held that the complaint alleged facts which, if true, would permit the inference that the defendants were liable for the alleged harm and would defeat the qualified immunity defense. *Hinojosa*, 807 F.3d at 663. However, the district court determined that further factual development was necessary for it to rule on the defense, because "[t]here remain significant questions to be answered as to the details of the TDCJ Defendants' knowledge, actions, omissions and/or policies in regards to TDCJ prison operations in times of extreme heat." *Id.* Consequently, the district court deferred ruling on the qualified immunity defense and ordered discovery "limited to the personal knowledge and personal conduct of each [d]efendant as it relates to Albert Hinojosa and the circumstances leading to his death." *Id.* The defendants then filed an interlocutory appeal with the Fifth Circuit.

On appeal, the court addressed the standard under which appeals of denials of

motions to dismiss on the basis of qualified immunity are adjudged, to wit:

> "[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." First, the district court must determine "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." When reviewing a complaint that meets this standard, the district court may defer its qualified immunity ruling and order limited discovery if "the court remains 'unable to rule on the immunity defense without further clarification of the facts.'" Such a discovery order must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." "[W]e may review the order under the collateral order doctrine when a district court fails to find first that the plaintiff's complaint overcomes a defendant's qualified immunity defense, when the court refuses to rule on a qualified immunity defense, or when the court's discovery order exceeds the requisite 'narrowly tailored' scope."

*Hinojosa*, 807 F.3d at 664 (internal citations omitted).

In the instant case, like the plaintiff in *Hinojosa*, the undersigned concludes the plaintiff has alleged sufficient facts that, if true, would overcome the defense of qualified immunity with respect to Chief Lartigue. Here, the undersigned has found the Amended Complaint alleges a Fourth Amendment violation. The Amended Complaint alleges that Chief Lartigue "ordered or at least encouraged detectives and officers of the VPPD to arrest people without probable cause for purposes of

30

investigative holds."[11]  The Amended Complaint goes on to allege:

> By April 2014, prior to plaintiff's arrest, Police Chief Lartigue knew that the above practice would result in the long imprisonment of numerous innocent people, resulting in severe financial stress and emotional distress, and in implementing and/or failing to stop the practice, they acted with deliberate indifference.

> The . . . police chief's practice in ordering or encouraging the arrest of innocent persons and the investigative holds was the direct cause of plaintiff's wrongful arrest.

> At the times relevant to this Complaint, the VPPD did not train its officers or detectives in the Fourth Amendment prohibition against unreasonable seizures.

> [ . . . ]

> Proper training in these clearly-established principles of constitutional law would have prevented [p]laintiff's unlawful detention of nearly 2.5 years.

> The violation of [p]laintiff's constitutional rights as protected by the Fourth Amendment . . . occurred because all [d]efendants exhibited deliberate indifference and disregard to the effect of the policies and practices of the VPPD towards residents who, like plaintiff, no evidence of criminal wrongdoing exists.[12]

The DOJ Report makes clear that Chief Lartigue was aware of, and indeed,

encouraged, the VPPD's unconstitutional use of investigative holds during the time

period investigated in the Report.  While the Chief strenuously argues that the DOJ

---

[11] *See* plaintiff's Amended Complaint, Doc. 32, at ¶32.

[12] *Id.* at ¶¶34-36, 39, 42.

Report is not applicable in this case because Mr. Frank was afforded the benefits of the legal process, the plaintiff is alleging that he was nevertheless arrested and detained without probable cause, which is, in effect, an argument that the VPPD continues to utilize unconstitutional policies within the context of its police processes. The plaintiff has, therefore, sufficiently argued that Chief Lartigue knew about the unconstitutional practice and yet still allowed the policy to be practiced with respect to him. If the plaintiff's allegations are true, the actions of Chief Lartigue were objectively unreasonable in light of clearly established law at the time of the conduct in question. That is, officers of reasonable competence could not disagree as to whether the plaintiff's rights were violated under the circumstances alleged in the complaint.

Because the defendants have not provided this Court with sufficient information to show that the probable cause process was not tainted in this matter, the undersigned cannot determine whether Chief Lartigue is entitled to the defense of qualified immunity. The burden is on the plaintiff to show that the defense is inapplicable, yet the plaintiff has not been provided with key factual information that will either substantiate his claim that the defense does not apply or doom it. For example, the defendants have not provided the application for the arrest warrant or the warrant itself, and no information has been provided regarding what evidence was

presented to the judge at the probable cause hearing. Without this information, no finding with respect to whether probable cause existed in this case, and the issue of whether the qualified immunity defense bars a claim against Chief Lartigue, can be determined at this stage of the litigation. Considering the foregoing, discovery should be allowed to explore the circumstances under which the original warrant was obtained, as well as the evidence that was presented to the judge who made the probable cause finding at the plaintiff's hearing. Consequently, it is recommended that the motion to dismiss the claims against Chief Lartigue in his individual capacity be denied at this juncture, and that limited discovery should be permitted. The discovery should be narrowly tailored to uncover facts surrounding the probable cause determinations that were made in this case, both at the arrest stage and the probable cause hearing stage.

On the other hand, the undersigned believes there is sufficient information in the record to show that the defense of qualified immunity is available to Mayor Vidrine, and that the defense bars the plaintiff's Fourth Amendment claims against her. The plaintiff acknowledges in his Amended Complaint that the mayor did not oversee the day-to-day activities of the police department. Although it is clear the mayor knew about the use of unconstitutional investigative holds in the past, it is reasonable to assume that if an arrest warrant was obtained with respect to a particular

individual, and a probable cause determination was made at a hearing, the mayor could have relied on those facts to assume that unconstitutional holds were no longer being utilized by the VPPD. That is, the actions of Mayor Vidrine in relying on the issuance of a warrant and probable cause determinations in this case were objectively unreasonable in light of clearly established law at the time of the conduct in question. Mayor Vidrine is not responsible for the implementation of proper police standards. Consequently, the undersigned recommends that the defendants' motion to dismiss the plaintiff's claims against Mayor Vidrine in her individual capacity should be granted, and those claims should be denied and dismissed with prejudice on grounds Mayor Vidrine is entitled to qualified immunity.

### iii.  Official capacity claims

The plaintiff has purportedly asserted §1983 official capacity claims against Chief Lartigue and Mayor Vidrine. "A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Deshotels v. Village of Pine Prairie*, 2012 WL 1712358, at *4 (W.D.La. Apr. 13, 2012), *citing Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 362, 116 L.Ed.2d 301(1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, 2012 WL 3962387, at

*4 (W.D.La. Sept. 4, 2012), *citing Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).   When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.   *See, e.g., Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir.1996).   In keeping with this principle, the undersigned finds that the plaintiff's claims against the individual defendants in their official capacities are redundant of the claims asserted against the City of Ville Platte.   Accordingly, the undersigned recommends that the defendants' motion to dismiss the plaintiff's claims against Chief Lartigue and Mayor Vidrine in their official capacities should be granted, and the foregoing claims should be denied and dismissed with prejudice.

### 3.  Claims against the City of Ville Platte

Municipalities and other bodies of local government are "persons" within the meaning of §1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  "A municipality cannot be held liable solely

because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." *Id.* at 691, 98 S.Ct. 2018. *See also City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. 658, 98 S.Ct. 2018. A municipality may be liable under §1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018. To avoid respondeat superior liability and to impose liability on the City, the plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the City's degree of culpability ("deliberate indifference" to the known or obvious consequences of the City's unconstitutional policy). *Bryan County v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Thus, to state a claim for municipal liability under §1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or custom, i.e., the deprivation of plaintiff's constitutional rights was inflicted pursuant to that official custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force"

behind the constitutional violation), *citing Monell*, 436 U.S. at 694, 98 S.Ct. 2018), *cert. denied*, 534 U.S. 820, 122 S.Ct. 53, 151 L.Ed.2d 23 (2001).  The Fifth Circuit has defined an official policy for purposes of §1983 as "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority." *Okon v. Harris County Hospital District*, 426 Fed.Appx. 312, 316 (5th Cir.2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).  When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority."  *Okon*, 426 Fed.Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.3d 221, 227 (5th Cir.2008).

Alternatively, a policy may be "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*, *citing Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir.2010)("A pattern of conduct is necessary only when the municipal actors are not policymakers"), *cert. denied*, 564 U.S. 1038, 131 S.Ct. 3059, 180 L.Ed.2d 887 (2011).  "A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in

question....A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir.2009). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984); *Peterson*, 588 F.3d at 850. "A pattern requires similarity and specificity"; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851, *citing Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005). A plaintiff cannot conclusorily allege a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir.1992). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992); *see also Rivera v. Houston I.S.D.*, 349 F.3d 244, 247 (5th Cir.2003)("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."), *citing Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626

38

(1997).

"The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed.Appx. at 316, *citing Bennett*, 735 F.2d at 862. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information," while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id.*, *citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir.1984) (*en banc*), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice;" it requires a plaintiff to show that "in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir.2010), *quoting City of Canton*, 489 U.S.

at 390, 109 S.Ct. 1197), *cert. denied*, 563 U.S. 935, 131 S.Ct. 2094, 179 L.Ed.2d 890 (2011).

To state a claim against a municipality under §1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by "*inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy.... Those types of details, together with any elaboration possible, help to (1) 'satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests, and (2) permits the court to infer more than the mere possibility of misconduct.'" *Flanagan v. City of Dallas, Texas*, 48 F.Supp.3d 941, 947 (N.D.Tex.2014), *citing Thomas v. City of Galveston*, 800 F.Supp.2d 826, 843–44 (S.D.Tex.2011); *Twombly*, 550 U.S. at 555 n. 3, 127 S.Ct. 1955; and *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

In the instant case, the defendants argue the plaintiff "does not properly allege any claim for municipal liability against the City of Ville Platte because plaintiff does not allege how the purported illegal detention policy resulted in a violation of Mr. Frank's constitutional rights, as there are no allegations that Mr. Frank was illegally detained prior to being arrested or that his booking on "felony charges" was without probable cause. The undersigned disagrees. Considering the allegations of the

plaintiff – that he was illegally held without probable cause, which was caused by the utilization of the VPPD in following long-standing practices of the VPPD – the undersigned finds the plaintiff states a claim against the City of Ville Platte for violation of his Fourth Amendment rights. Consequently, it is recommended that the defendants' motion to dismiss the municipal liability claims should be denied.

### 4.  Punitive Damages

The plaintiff alleges a claim for punitive damages against all defendants. The law is well-settled that punitive damages cannot be imposed against a municipality in a §1983 action. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Consequently, the claim for punitive damages against the City of Ville Platte must be dismissed. Inasmuch as the claims against Chief Lartigue and Mayor Vidrine in their official capacities are also dismissed as redundant of the claims alleged against the City, any claim for punitive damages against Chief Lartigue and Mayor Vidrine in their official capacities must be dismissed as well.

Punitive damages may be awarded against individuals in §1983 cases "when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). "Reckless indifference has been described by the Supreme Court has 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'"

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (citations omitted).

Based upon the allegations set forth in the Amended Complaint that Chief Lartigue knew about the policy of unconstitutional investigative holds, knew that adequate training had not been put in place to, or acquiesced in the use of such holds, the undersigned concludes the acts alleged against Chief Lartigue could involve "reckless or callous indifference to the federally protected rights of others." For this reason, it is recommended that the motion to dismiss the plaintiff's claim for punitive damages against Chief Lartigue in his individual capacities should be denied.

### 5.  Prescription

The defendants argue that any claims for false arrest or unlawful detention are time-barred, under Article 3492 of the Louisiana Civil Code. Specifically, the defendants argue the prescriptive period for plaintiff's claims under Article 3492 is one year and began to run on the date the plaintiff was bound over for trial, that is, October 23, 2014. Because the plaintiff did not file his original complaint until October 20, 2017, the defendants argue his claims are time-barred. However, the defendants' interpretation of the jurisprudence is not persuasive.

It is well-settled that "[t]here is no federal statute of limitations for actions brought pursuant to 42 U.S.C. §1983[, and] federal courts borrow the forum state's general personal injury limitations period." *Thomas v. Gryder*, 2018 WL 4183206

*3 (M.D. La. Aug. 31, 2018), *citing Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed.Appx. 66, 67 (5th Cir. 2009) (unpublished) ("The prescriptive period for a claim brought under §1983 is provided by the law of the state in which the claim arose."); *Smith v. Lavespere*, 2014 WL 4063927, at *3 (M.D. La. Aug. 15, 2014) ("Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. In Louisiana, the applicable period of limitations is one year."). Thus, under Louisiana law, the prescriptive period for the plaintiff's claim is one year. However, although the prescriptive period for §1983 claims is determined by state law, "the accrual date of a §1983 cause of action is a question of federal law that is not resolved by reference to state law." *Thomas v. Gryder*, 2018 WL 4183206 at *3, *citing Wallace*, 549 U.S. at 388, 127 S.Ct. 1091. *See also Harris*, 198 F.3d at 156-157 ("Although federal courts look to federal law to determine when a civil rights action accrues, state law supplies the applicable limitations period and tolling provisions."). Under the usual rule, "a section 1983 action generally accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Thomas*, 2018 WL 4183206 at *3, *citing Harris*, 198 F.3d at 157, *citing Jackson*, 950 F.2d at 265.

43

Claims of false imprisonment are treated uniquely under the law.  Noted the court in *Thomas*:

> However, "[t]he running of the statute of limitations on false imprison-ment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: 'Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'"  "[T]o determine the beginning of the limitations period ... [the court] must determine when petitioner's false imprisonment came to an end."  **Applying this rule, other federal courts in Louisiana have held that the limitations period for a §1983 claim based on false imprisonment begins to run when a claimant is released.**

2018 WL 4183206, at *3 (internal citations omitted) (emphasis added).

The court's decision in *Thomas* is consistent with the recent case of *Manuel*. In *Manuel* – wherein the Supreme Court held that alleged violations of improper seizure lie under the Fourth Amendment, even after a probable cause determination – the Court side-stepped the issue of when the claim for improper detention begins to run, remanding the matter to the Seventh Circuit Court of Appeals to address.  In *Manuel*, like the City in the instant matter, the City of Joliet, Illinois also argued that any Fourth Amendment claim accrues (and the limitations period starts to run) on the date of the initiation of legal process. 137 S. Ct. 911 at 921.  On remand, the Seventh Circuit disagreed, holding a claim for wrongful detention accrues on the date the detention ends. And noting that "there is no such thing as a constitutional right not to be prosecuted without probable cause.  But there is a constitutional right not to be

44

held in custody without probable cause." *Manuel*, 903 F.3d at 670, *citing Serino v. Hensley*, 735 F.3d 588, 593 (7ᵗʰ Cir. 2013). The *Manuel* court further noted, "[t]he wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends." 903 F.3d at 670.

In the instant matter, the plaintiff argues his claim accrues on the date he was released. With regard to plaintiff's release date, defendants filed a Supplemental Reply Memorandum [Doc. 40] and attached the following additional public records from the matter entitled *State of Louisiana v. Steveniski Frank,* Docket Nos. 99826-F and 98080-F: Criminal Bond Record, 10/20/16 Court Minutes, 10/18/17 Court Minutes, and Jail Card. The Criminal Bond Record and Jail Card indicate that plaintiff's original $200,000 bond was subsequently reduced to $10,000 and that plaintiff was released on said bond on September 4, 2016. The Minutes of Court from October 20, 2016 indicate that, on that date, the State moved to pass on the charges due to insufficient evidence for prosecution. Accordingly, the Court relieved plaintiff from his bond obligation at that time. Nothing in the records submitted by the defendants shows what other conditions, if any, were imposed by the Court upon plaintiff at the time of his release on bond.

In *Mitchell v. City of Elgin*, 912 F.3d 1012 (7ᵗʰ Cir. 2019), the plaintiff, a pretrial detainee who had been released on bond after her arrest, brought an action

45

under §1983 against the municipality and several of its police officers, seeking damages for wrongful prosecution under various federal and state legal theories. Citing the Supreme Court's decision in *Manuel*, the court acknowledged that the plaintiff stated a Fourth Amendment claim for unlawful pretrial detention and then turned its attention to the timeliness of the plaintiff's Fourth Amendment claims. *Mitchell*, 912 F.3d at 1016. The defendants argued that under the Seventh Circuit's decision on remand in *Manuel*, the plaintiff's seizure ended when she was released on bond. The Court was not convinced, explaining:

> This argument overlooks the possibility that pretrial release might be construed as a "seizure" for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty. Several of our sister circuits have adopted this approach. *See, e.g., Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (explaining that a seizure occurred where the plaintiff had to "obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information"), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Two circuits have even gone so far as to characterize the obligation to appear in court, standing alone, as an ongoing seizure. *Black v. Montgomery County*, 835 F.3d 358, 366–67 (3rd Cir. 2016); *Swartz v. Insogna*, 704 F.3d 105, 112 (2nd Cir. 2013). This appears to be a minority position, however. *See Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) ("[R]un-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term [seizure]."); *see also Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010); *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004); *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018). In any event, there is out-of-circuit support for the proposition that the concept of "seizure" under the Fourth Amendment extends beyond physical detention.

[ . . . ]

On this record, however, we are unable to decide the matter. The parties haven't briefed the legal question of the scope of a Fourth Amendment "seizure" in this context. And even if we decided to reach the merits, we lack sufficient information about Mitchell's conditions of release to determine if she remained "seized" while on pretrial release. In her supplemental filing, Mitchell simply pointed to the bond conditions imposed by Illinois law. See 725 Ill. Comp. Stat. 5/110-10(a)(1)–(3) (2006) (requiring a person released on bond to attend a court hearing and seek permission before leaving the state). She also noted that a judge may impose additional release conditions. But we don't know whether the judge did so in her case.

For now, all we can say is that in light of Manuel I, Mitchell's Fourth Amendment claim was wrongly dismissed based on our now-abrogated circuit caselaw. But the timeliness of the claim remains an open question, and gaps in the briefing and record preclude our ability to answer it. We therefore reverse and remand for further proceedings consistent with this opinion.

*Mitchell*, 912 F.3d at 1016-17.

In addition to the rationale set forth in *Mitchell*, the undersigned is cognizant of the complete contours of Louisiana's body of law with respect to prescription. Because this Court must apply Louisiana's statute of limitations, it should also give effect to any applicable Louisiana tolling provisions.  *King-White v. Humble Independent School Dist.*, 803 F.3d 754, 764 (5th Cir. 2015).  Louisiana's general rule for tolling—referred to as *contra non valentem*—is that prescription is tolled or suspended when the plaintiff is "effectually prevented from enforcing his rights for reasons external to his own will." *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994).

Louisiana's federal courts have, on numerous occasions, applied *contra non valentem* in Section 1983 cases. *See, e.g., Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015); *Hernandez v. Smith*, 2015 WL 9921067, at *3 (W.D. La. 2015), *report and recommendation adopted*, 2016 WL 356044 (W.D. La. 2016).

There are four factual situations in which *contra non valentem* prevents the running of the prescriptive period: (1) when a legal cause prevented the courts or court officers from taking cognizance of or acting on the plaintiff's action; (2) when a condition coupled with a contract or connected with the proceedings prevented the plaintiff from suing or acting; (3) when the defendant himself has done some act to prevent the plaintiff from availing himself of his cause of action; or (4) when the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiff's ignorance was not induced by the defendant. *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 245 (La. 2010); *Burge v. Parish of St. Tammany*, 996 F.2d 786, 788-89 (5th Cir.1993). The doctrine of *contra non valentem* specifically recognizes that "prescription does not run against a party who is unable to act." *Corsey v. State, Through Dept. of Corrections*, 375 So.2d at 1321. "*Contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).   The plaintiff has not had sufficient opportunity to argue how and to what extent the doctrine of *contra non valentem*

might apply in the instant case because the defendant's prescription argument focused on incorrect law regarding the date upon which plaintiff's claim accrued and the date upon which prescription began to run.

Here, the plaintiff appears to have been released on bond on September 4, 2016, however it appears the charges against the plaintiff were not dropped until October 20, 2016 – one year to the day before the plaintiff filed his Fourth Amendment claims. The parties have not briefed the legal question of the scope of a Fourth Amendment "seizure" in the context of the factual scenario herein, or the applicability of the doctrine of *contra non valentem*, and the undersigned is therefore unable to determine whether the plaintiff's Fourth Amendment claims were timely filed. Consequently, the undersigned must recommends that the motion to dismiss the plaintiff's Fourth Amendment claims on grounds of prescription be denied, subject to the right of the parties to raise this issue again at the summary judgment stage of the litigation.

## C. Supplemental state law claims

The defendants urge this Court to dismiss any supplemental state law claims that may have been pled. As this Court is unaware of any supplemental state law claims that were pled, it is recommended that the motion to dismiss supplemental state law claims be denied as moot.

### D.  Motion to Strike

Finally, the defendants seek to strike all allegations related to the alleged constitutional rights violations of third parties, and specifically, to strike all references to the Department of Justice's investigation into the VPPD's policy of using "investigative holds" as a police tool.  Finding that DOJ Report is relevant to the plaintiff's claims herein, and further having taken judicial notice of the Report itself, it is recommended that the motion to strike be denied.

## III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Rule 12 Motion to Dismiss, and alternatively, to Strike Plaintiff's Amended Complaint [Doc. 34] filed by defendants the City of Ville Platte, Chief of Police Neal Lartigue, and Mayor Jennifer Vidrine be GRANTED IN PART AND DENIED IN PART. Specifically, it is RECOMMENDED that the motion be GRANTED in the following respects:

1.  The motion to dismiss the claims against Mayor Vidrine in both her individual and official capacities should be GRANTED, and all claims alleged against Major Vidrine should be DENIED AND DISMISSED WITH PREJUDICE.

2.  The motion to dismiss the claims against Chief Lartigue in his official capacity should be GRANTED, and the foregoing claims should be DISMISSED WITH PREJUDICE, while the motion to dismiss the claims against Chief Lartigue in his individual capacity should be DENIED.

3.    The motion to dismiss the claims against the City of Ville Platte should be DENIED.

4.    The motion to dismiss the claim for punitive damages against Mayor Vidrine should be GRANTED, and that claim should be DISMISSED WITH PREJUDICE. The motion to dismiss the claims for punitive damages against Chief Lartigue in his official capacity should be GRANTED, and that claims should be DISMISSED WITH PREJU-DICE, while the motion to dismiss the claim for punitive damages against Chief Lartigue in his individual capacity should be DENIED.

5.    The defendants' motion to dismiss the plaintiff's claims as prescribed should be DENIED.

6.    The defendant's motion to dismiss all supplemental state law claims should be DENIED AS MOOT.

7.    The defendants' motion to strike all references to the Department of Justice's investigation into the VPPD's policy of using "investigative holds" as a police tool should be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

      **THUS DONE AND SIGNED** at Lafayette, Louisiana, this 4th day of February, 2019.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

52