# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| **STEVENISKI FRANK, SR.** | **CIVIL ACTION NO. 6:17-CV-01351** |
| **VERSIS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF VILLE PLATTE, ET AL.** | **MAG. JUDGE CAROL WHITEHURST** |

### RULING

Pending here is a Rule 12 Motion to Dismiss and Alternatively Motion to Strike Plaintiff's Amended Complaint filed by Defendants City of Ville Platte, Chief of Police Neal Lartigue, and Mayor Jennifer Vidrine [Doc. No. 34].

On February 4, 2019, the Magistrate Judge issued a Supplemental and Amended Report and Recommendation recommending that Defendants' motion be granted in part and denied in part [Doc. No. 42].

On February 18, 2019, Defendants filed an objection to the Supplemental and Amended Report and Recommendation to the extent it recommended denial of their motion [Doc. No. 43]. Plaintiff Steveniski Frank, Sr. ("Frank") did not file a response to the objection. Having conducted a *de novo* review of the record in this matter, the Court ADOPTS the Supplemental and Amended Report and Recommendation to the extent it recommends granting Defendants' motion and DECLINES TO ADOPT the Supplemental and Amended Report and Recommendation to the extent it recommends denying Defendants' motion.

## I.      FACTUAL BACKGROUND

On April 25, 2014, Frank was arrested pursuant to a warrant on a charge of armed robbery.  On April 28, 2014, Frank was present in court for a 72-Hour Appointment of Counsel

Hearing before Judge J. Larry Vidrine, at which time attorney Jacob Fusilier was appointed as his counsel.

On June 4, 2014, Frank was again present in court before Judge Vidrine for an arraignment. He was represented at the arraignment by attorney Alex Chapman, standing in for Mr. Fusilier. Counsel waived the reading of the bill of information and entered a plea of not guilty.

On September 25, 2014, Frank appeared in court with counsel before Judge Thomas Fusilier. Counsel moved to continue various discovery motions that were set for hearing that day. The motions were re-set for October 23, 2014.

A preliminary hearing was held on October 23, 2014, with Frank present in court and represented by Mr. Fusilier. The State offered the testimony of Detective Chatuse James of the Ville Platte Police Department ("VPPD"), and Frank offered the testimony of witnesses Sadie Frank and Stephanie Frank. The court found probable cause existed to hold Frank in custody, and trial was set for March 9, 2015.

On October 29, 2014, Assistant District Attorney Trent Brignac filed a Bill of Particulars for armed robbery with a lesser included charge of theft.

On September 4, 2016, Frank posted bond and was released on bond that same day. On October 20, 2016, the State moved to dismiss the charges due to insufficient evidence for prosecution, and the Court relieved Frank from his bond obligations at that time.

Frank filed the instant lawsuit in this Court on October 20, 2017, pursuant to Title 42, United States Code, Section 1983. He names the City of Ville Platte, Chief Neal Lartigue, and Mayor Jennifer Vidrine as Defendants. He alleges violations of his Fourth and Fourteenth Amendment rights to be free from unlawful arrest and detention.

Frank alleges he was detained for two and one-half years before the charges against him were dismissed. He alleges that, on the date he was arrested, he was told by a VPPD detective that "the detective knew" Frank had not committed the crime for which he had been arrested. He also alleges he was held in jail, even though VPPD detectives knew that the storeowner had not identified him as the person who had robbed the store. He alleges he has a distinctive scar near his right eyebrow, which would have been visible to the store owner, even though the store owner stated the perpetrators were wearing masks. He further alleges that for the next two and one-half years, the VPPD tried to coerce him into giving false and incriminating statements, and that he was told by the prosecuting attorney that the prosecution did not believe he had committed the crime with which he had been charged.

In his Amended Complaint [Doc. No. 32] Frank alleges a pattern or practice on the part of the City of Ville Platte, through the VPPD, of illegally seizing and detaining innocent individuals for the sole purpose of investigating whether these individuals have been engaged in criminal activity and alleges these "investigative holds" are used as a device to compel individuals to provide information on others who may have engaged in criminal activity, even though those individuals may not have such information.

Although he was arrested pursuant to a warrant, Frank's Amended Complaint refers to an investigative report of the United States Department of Justice (the "DOJ Report"), posted on its website, in which the DOJ "found reasonable cause to believe that the Ville Platte, Louisiana, Police Department (VPPD) and the Evangeline Parish Sheriff's Office (EPSO) engage in a pattern or practice of conduct that violates the Fourth Amendment to the Constitution." The DOJ Report goes on to state:

Both VPPD and EPSO have arrested and held people in jail—without obtaining a warrant and without probable cause to believe that the detained individuals had committed a crime—in violation of the Fourth Amendment to the Constitution. … EPSO and VPPD violate the Fourth amendment by arresting and detaining individuals without a warrant or probable cause.  The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that warrants be based on "probable cause."  , , ,  Police may satisfy the probable cause requirement in either of two ways: (1) an officer may obtain a warrant prior to arrest by presenting information of probable cause to a judge, or (2) an officer may determine that probable cause exists in the field.  *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975).  When a suspect is arrested without a warrant a neutral magistrate must verify probable cause as soon as reasonably possible and no later than 48 hours after arrest, absent an emergency or other extraordinary circumstances.

The DOJ found that VPPD and EPSO used a procedure the agencies called an "investigative hold" to detain individuals without probable cause during criminal investigations. As a result of this pattern or practice, people in Evangeline Parish have been arrested and placed in holding cells without probable cause. Often, individuals were in holding cells for several days at a time, where they were unable to contact family, friends or employers and had limited access to food and personal items.[1]

Finally, Frank alleges the Defendants acted with deliberate indifference to his constitutional rights by:  (1) failing to establish, implement, and follow the correct constitutional policies, procedures, customs, and/or practices; (2) failing to properly select, supervise, train, control and review the activities of their agents, servants, employees, and police officers regarding their compliance with constitutional safeguards; (3) permitting their agents, servants, employees, and police officers to engage in unlawful and unconstitutional conduct; and (4)

---

[1] The DOJ Report is readily available on the Department of Justice's website. United States Department of Justice, Civil Rights Division, Investigation of the Ville Platte Police Department and the Evangeline Parish Sheriff's Office, (December 19, 2016), https://www.justice.gov/opa/file/919436/download.

exercising, at a minimum, deliberate indifference towards the constitutional protections afforded to him by engaging in the unconstitutional practice and custom of illegal detention.

Defendants responded by filing this Rule 12 Motion to Dismiss and Alternatively Motion to Strike Plaintiff s Amended Complaint. [Doc. 34]. Defendants seek dismissal of all of Frank's claims on grounds that the fact that he had the benefit of the legal process – that is, the fact that he was arrested pursuant to a warrant, was arraigned and appointed counsel, and had the benefit of a probable cause hearing before a judge, who found probable cause to hold him over for trial – negates the possibility of a Fourth Amendment claim. In support, Defendants attached public records from Frank's criminal suit record, entitled *State of Louisiana v. Steveniski Frank*, Docket No. 99826-F, 13th Judicial District Court, Parish of Evangeline, which verify the above court proceedings.

Defendants further argued that Frank's claims of unlawful arrest are time-barred; that all individual liability claims against Chief Lartigue and Mayor Vidrine should be dismissed as the allegations are insufficient to establish supervisory liability or to overcome the defense of qualified immunity; that all official capacity claims against Chief Lartigue and Mayor Vidrine should be dismissed because they are redundant of the municipal liability claims against the City; that all claims of municipal liability against the City should be dismissed because Frank has not pled sufficient facts to support a claim that the alleged constitutional violations were due to an official policy of the City; that the claim for punitive damages against the City should be dismissed, as such damages are not available under the law; and that the claims for punitive damages against Chief Lartigue and Mayor Vidrine in their individual or official capacities should be dismissed.

Additionally, Defendants urged the Court to dismiss any supplemental state law claims that may have been pled, to strike all allegations related to the alleged constitutional rights violations of third parties, and specifically, to strike all references to the Department of Justice's investigation into the VPPD's policy of using "investigative holds" as a police tool.

On February 4, 2019, the Magistrate Judge issued a Supplemental and Amended Report and Recommendation recommending that Defendants' motion be granted in part and denied in part [Doc. No. 42]. Specifically, the Magistrate Judge recommended:

1. The motion to dismiss the claims against Mayor Vidrine in both her individual and official capacities should be GRANTED, and all claims alleged against Major Vidrine should be DENIED AND DISMISSED WITH PREJUDICE.

2. The motion to dismiss the claims against Chief Lartigue in his official capacity should be GRANTED, and the foregoing claims should be DISMISSED WITH PREJUDICE, while the motion to dismiss the claims against Chief Lartigue in his individual capacity should be DENIED.

3. The motion to dismiss the claims against the City of Ville Platte should be DENIED.

4. The motion to dismiss the claim for punitive damages against Mayor Vidrine should be GRANTED, and that claim should be DISMISSED WITH PREJUDICE. The motion to dismiss the claims for punitive damages against Chief Lartigue in his official capacity should be GRANTED, and that claim should be DISMISSED WITH PREJUDICE, while the motion to dismiss the claim for punitive damages against Chief Lartigue in his individual capacity should be DENIED.

5. The defendants' motion to dismiss the plaintiff's claims as prescribed should be DENIED.

6. The defendant's motion to dismiss all supplemental state law claims should be DENIED AS MOOT.

7. The defendants' motion to strike all references to the Department of Justice's investigation into the VPPD's policy of using "investigative holds" as a police tool should be DENIED.

Defendants have timely objected to the Supplemental and Amended Report and Recommendation insofar as it recommended a denial of their motion. Specifically, Defendants argue:

1. The DOJ report should not be used to supplement Frank's allegations as it involved warrant-less searches, and Frank was arrested pursuant to a warrant.

2. The independent intermediary doctrine mandates dismissal of Frank's claims as a neutral independent magistrate found probable cause existed for his arrest and detention. The Amended Complaint does not include any factual allegations warranting application of the "taint exception."

3 . Frank's claims have prescribed as he did not file suit within a year from his probable cause hearing or from his date of release.

4. In the alternative, limited discovery should be allowed solely on the issues of probable cause and prescription.

## II.    STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 72(3), this Court's review of the Report is *de novo*:

*(3)  Resolving Objections*.  The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

With respect to the Report, pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *See also Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

## III.   LAW AND ANALYSIS

### A.    Rule 12(b)(6)

To survive a Rule12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232–33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

### B.    Section 1983

Title 42, United States Code, Section 1983, creates a cause of action for an individual whose constitutional rights are violated by a person acting under the color of state or federal law. The purpose of § 1983 is to deter "state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161(1992). State actors may defend themselves by claiming they have qualified immunity for their actions if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

### C.    The DOJ Report

In recommending that the Defendants' motion to dismiss should be denied in part, the Magistrate Judge took judicial notice of the DOJ Report posted on its website.  The Magistrate Judge then relied on the report's findings to supplement Frank's allegations.

Defendants submit this reliance is unfounded as the DOJ Report investigated the practice of arresting and detaining people without a warrant or probable cause, concluding that "[b]oth VPPD and EPSO have arrested and held people in jail-without obtaining a warrant and without probable cause to believe that the detained individuals have committed a crime- in violation of the Fourth Amendment to the Constitution."

Defendants point out the record in this case establishes Frank was arrested pursuant to a warrant, was subject to timely and ongoing court scrutiny, and was represented by legal counsel throughout.

This Court agrees with Defendants. The situation presented here is substantially different from the focus of the DOJ's investigation, which exclusively focused on the practice of arresting and holding people in jail without obtaining a warrant and without probable cause to believe that the detained individuals had committed a crime. The record evidence in this suit establishes Frank was arrested pursuant to a warrant, whereupon there was prompt and ongoing involvement by the court, including a 72-hour hearing, as well as a finding of probable cause in a preliminary hearing. Additionally, Frank was represented by counsel throughout.

Accordingly, this Court concludes that, even if this Court can properly take judicial notice of the DOJ Report, it has no persuasive authority with regard to Frank's claims in this case, as the DOJ Report dealt with arrests without a warrant or without probable cause.

### D. Independent Intermediary Doctrine

Defendants moved to dismiss Frank's suit because an independent intermediary found probable cause existed, breaking the chain of causation for the alleged claim of false arrest. They also contend Frank failed to allege the intermediary's decision was tainted by the Defendants' actions.

Paragraphs 20-28 of Frank's Amended Complaint contain the factual allegations relative to Frank's arrest:

20.

On April 25,2014, plaintiff Frank Steveniski, Sr. was arrested and charged with the armed robbery of a retail store and sat in jail for nearly 2.5 years- only to have those charges dismissed for lack of evidence after such a lengthy and oppressive period.

21.

On or about the day on which he was arrested, Plaintiff was told by a VPPD detective that the detective knew that Plaintiff had not committed the crime for which he had been arrested.

22.

Mr. Steveniski was nonetheless held for the next 2.5 years while the City of Ville Platte, through its agent the VPPD, attempted to coerce him into giving false and incriminating statements.

23.

Over two years after he was first detained, Plaintiff was informed by the prosecuting attorney that the prosecution did not believe that Plaintiff had committed the crime with which he had been charged.

24.

The charges against Mr. Steveniski were - eventually- "passed" for lack of evidence.

25.

Plaintiff was arrested and held in jail even though VPPD detectives knew that the store owner had not identified plaintiff as one of the persons who had engaged in the armed robbery. According to the store owner, the perpetrators of the crime were wearing masks so that he could not say [sic] any portion of their faces other than their eyes.

26.
.

Plaintiff has a distinct scar in the area of his right eyebrow which is plainly visible to anyone observing him.

27.

Even assuming the accuracy of the store owner's statement that robbers were wearing masks, the store owner would have seen the scar; however, when the VPPD officers asked the owner for a description of the robbers, he said nothing about any of the robbers having a scar over their eyes.

28.

As a result of the above, the VPPD knew that there was nothing to tie plaintiff to the robbery, yet they allowed him to sit in jail for the crime. The VPPD did so in order to buy time to investigate the matter further, even though its personnel knew that the evidence against plaintiff was non-existent or flimsy at best.

[Doc. 32].

The Fifth Circuit recently set forth the law with regard to the independent

intermediary rule as follows:

> It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. And our precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime.  So unless an exception to the independent intermediary rule applies, [the plaintiffs] grand jury indictment dooms his false arrest claim.
>
> There is an exception to the independent intermediary rule if the plaintiff shows that the deliberations of that intermediary were in some way tainted by the actions of the defendant. Because the intermediary's deliberations protect even officers with malicious intent. a plaintiff must show that the officer's malicious motive led the officer to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. When analyzing allegations of taint at the motion to dismiss stage, mere allegations of taint may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference.

*Curtis v. Sowell*, No. 18-20164, 2019 WL 654170 * 2 (5th Cir. 2019) (citations, quotations,

brackets omitted).

In *Curtis*, the plaintiff was indicted by a grand jury. The charges were ultimately dismissed, and the plaintiff sued the county and its sheriff, deputy, and district attorney under § 1983 alleging his arrest and prosecution violated the Fourth Amendment. The defendants filed a motion to dismiss claiming they were absolved by the "impartial intermediary doctrine." Finding the doctrine applied, the district court granted the motion to dismiss, and the Fifth Circuit affirmed:

> lPlaintiff] does not allege that the Appellees deceived the grand jury or withheld material information from it. He alleges that District Attorney McLain "persuaded the grand jury to indict [him], even though Mr. McLain knew that there was no factual or legal basis for the charge." But that is not an allegation that McLain, or anyone else, deceived or withheld material information from the grand jury. McLain's subjective beliefs about the merits of the prosecution-even if those beliefs rose to the level of "malicious intent"- are inconsequential. Because [plaintiff] failed to present well-pleaded allegations of taint, and because probable cause was found by a grand jury, the district court did not err in dismissing this claim.

*Id*. (citations omitted)

Likewise, here, Frank did not allege in his pleadings, and did not raise any argument in his opposition to the motion to dismiss, that the information presented to the judge at the probable cause hearing was false or misleading. Nevertheless, the Magistrate Judge found, through reliance on the DOJ report and inferences made from the Complaint, that the process was tainted, such that the independent intermediary doctrine does not defeat Frank's allegations:

> Contrary to the defendants' argument, however, the plaintiff does indeed allege, albeit somewhat inartfully, that his arrest and detention were illegal, in that there was no probable cause to support either, despite the fact that probable cause was determined to exist both before the issuance of the warrant and by Judge Fusilier at the plaintiff's October 2014 probable cause hearing. The plaintiff alleges the owner of the store that was robbed stated the perpetrators were wearing ski masks and the store owner was therefore unable to see the face of the perpetrator. Regardless, he argues he has a distinctive scar in the area of his right eyebrow, which would have been visible even when wearing a ski mask. The plaintiff argues the store owner did not state the perpetrator had a scar. The plaintiff further argues that on the day he was arrested, a VPPD detective told him that the

detective knew the plaintiff had not committed the crime for which he had been arrested, and he was later told by the prosecuting attorney that the prosecution did not believe the plaintiff had committed the crime for what he had been charged. The plaintiff argues that despite the foregoing, he was arrested, charged, and detained for two and a half years before the charges against him were dismissed. The plaintiff argues" in effect, that the legal process he was afforded was tainted.

[Doc.42, pages 15-16].

This Court disagrees with this portion of the Supplemental and Amended Report and Recommendation. As held by the Fifth Circuit in *Curtis*, *supra*, the defendant's "subjective belief about the merits of the prosecution . . . are unconsequential."

Thus, even if the detective or prosecutor believed the prosecution did not have merit and communicated this belief to Frank, this does not rise to the level of "taint" sufficient to negate the finding of the neutral intermediary as provided by the Fifth Circuit in *Curtis*. Rather, Frank must allege the Defendants either (i) withheld material information or (ii) deceived the judge during the probable cause hearing. *See Republic Fire and Casualty Insurance Company v. Charles*, Civil Action No. 17-5967, 20l8 WL310378, at *4 (E.D. La. Jan. 5, 2018) (In order to overcome a motion to dismiss, the plaintiff must allege "that an initiating party maliciously mislead or intentionally provided false information to the intermediary").

Instead, Frank makes misleading allegations suggesting he was arrested and detained for two and one-half years without court involvement or due process. Such allegations completely ignore that there was also involvement by the District Attorney's office in issuing a Bill of Particulars for armed robbery. Most significantly, there was a probable cause determination by Judge Fuselier which broke the chain of causation regarding any alleged false arrest.

Additionally, Frank was initially arrested pursuant to a warrant, which would have also required a finding of probable cause by an independent intermediary.

The Supplemental and Amended Report and Recommendation faults Defendants for failing to provide the Court with a copy of the arrest warrant and with information regarding what evidence was presented at the probable cause hearing [Doc. No. 42, p. 17]  However, it is not Defendants' burden to present evidence disproving Frank's allegations at the motion to dismiss stage.  Instead, it is Frank's burden to include sufficient factual allegations in his complaint that "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 67-79.

The independent intermediary doctrine mandates dismissal of the complaint against all Defendants, including the defendant municipality.  For example, in *Lock v. Torres*, the plaintiff filed a § 1983 action against a municipality, sergeant, and deputies for unlawful arrest. 694 Fed.App'x. 960 (5th Cir. 2017). The Fifth Circuit found the independent intermediary doctrine applied as the plaintiff was brought before a judge who found the arrest was supported by probable cause. Pursuant to this doctrine, the individual deputies and their supervisors were dismissed. The Fifth Circuit then held the municipality was also entitled to dismissal under this doctrine:

> Municipal liability will not attach if the complaining party has suffered no constitutional injury at the hands of a municipal employee. Because the independent intermediary doctrine operates as a bar to all claims against [the individual deputies and supervisors], there is no constitutional violation arising from the actions of the individual defendants. Without a constitutional violation, the municipality] is not liable under Section 1983.

*Id*. at 965 (citations and quotations omitted).

Thus, the independent intermediary doctrine mandates dismissal of Frank's action as he failed to include any factual allegations regarding the withholding of information at the probable

cause hearing.  Neither the DOJ report, nor Frank's allegations support any inference the probable cause hearing was tainted.

In *Curtis*, the Fifth Circuit found the Southern District of Texas properly dismissed the plaintiff s Fourth Amendment claim as he "failed to present well-pleaded allegations of taint" and "probable cause was found by a grand jury." 746 Fed. App'x. at 408-409.  Similarly, in this case, Franks failed to present well-pleaded allegations of taint in his Original or Amended Complaint, and an independent intermediary found probable cause existed twice for his arrest and detainment.

Pursuant to *Lock v. Tones*, *supra,* this doctrine warrants dismissal of all Defendants.

Although plaintiffs are often given leave of court to amend their pleadings, this Court finds dismissal is the appropriate remedy here. This litigation has been pending since October 20, 2017. [Doc. No. 2]. Franks has already amended his petition once in response to Defendants' initial motion to dismiss. [Doc. No. 32].  Franks has been aware of the public records which contradict his allegations. [Doc. No. 34-8].   Yet Franks chose not to include allegations in his complaint addressing the arrest warrant or the probable cause determination.

Accordingly, dismissal of Frank's suit is the proper remedy.

### E.    Prescription

Additionally, this Court finds Frank's claims have prescribed.

The relevant dates are:

|                   |                                         |
|-------------------|-----------------------------------------|
| April 25, 2014    | Arrested pursuant to a warrant          |
| April 28, 2014    | 72 Hour Appointment of Counsel Hearing  |
| June 5, 2014      | Pled not guilty at Arraignment          |
| October 23, 2014  | Preliminary Hearing, probable cause found |

| September 4, 2016 | Posted bond and bonded out |
| October 20, 2016 | Relieved of bond obligation |
| October 20, 2017 | Suit filed |

In § 1983 actions, federal courts borrow the forum state's personal injury limitations period, which is one year in Louisiana. *Thomas v. Gryder*, No. 17-1595, 2018 WL 4183206, at *3 (M.D. La. 8/31/18).

But federal law still governs the accrual date of a § 1983 claim. *Id.*

Defendants argue under federal law, prescription on a false arrest and false imprisonment claim begins to run when the plaintiff is detained pursuant to legal process. For example, in *Hamilton v. City of Baton Rouge*, the plaintiff filed suit on August 26, 2015 alleging he was falsely arrested and imprisoned on July 20, 2014. No. 15-585, 2018 WL 1354461 (M.D. La.2/28/18). The defendants filed a motion to dismiss based on prescription. The record established the plaintiff was arrested and imprisoned on July 20, 2014, a bill of information was filed on October 6, 2014, and the plaintiff was arraigned on November 3, 2014. The plaintiff ultimately pled guilty to a lesser charge on August 3, 2016. Relying on the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), Judge deGravelles found prescription on the plaintiff's claim began to run when the plaintiff was arraigned:

> The Supreme Court has held that "the statute of limitations upon which a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 396. In Wallace, the Court explained that "[t]he running of the statute of limitations on false imprisonment is subject to a distinctive rule- dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: 'Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'" *Id.* at 389. See also, *White [v. Gusman*, 347 Fed.App'x. 66, 67-68] (explaining that"'[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.") (citing *Wallace*); *Mapes v. Bishop*, 541 F.3d 582, 584(5th Cir.2008) ("The 'statute of limitations

upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.'"). "[A] false imprisonment ends once the victim becomes held pursuant to such process- when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. *Id*. at *3.

The court also relied on *Spriggs v. Wiley*, wherein Judge Brady held the prescription on the plaintiff s false imprisonment claims began to run on the date of his arraignment. No. 11-316, 2012 WL 1143842, at *3 (M.D . La. 4/4/12) ("[L]egal process generally begins, and thus the false imprisonment tolling begins, at arraignment"). Accordingly, the court found prescription began to run on the plaintiff's false arrest and false imprisonment claims on the date he was arraigned- November 3, 2014, and suit filed on August 26, 2014, less than a year later, was timely.

Defendants also cite *McGuire v. Larpenter*, No. 14-30498, 592 Fed. App'x. 272, 275 (5th Cir.2014) ("If a suspect is unlawfully arrested under warrant, the [United States Supreme Court] held that the limitations period begins to run when the suspect's false imprisonment comes to an end, which occurs when the suspect appears before the examining magistrate and is bound over for trial"); *Guillory v. Dalbour*, No. 2:15-CV-02452, 2016 WL 5415072, at *4 (W.D. La. 9/27/16) (citations omitted) ("For a § 1983 unlawful arrest or unlawful imprisonment claim based on an arrest with a warrant, the limitations period begins to run when the suspect's false imprisonment comes to an end, which occurs when the suspect is detained pursuant to a legal process, such as appearing before a magistrate"); *Miguez v. Ackal*, No. 6:16-CV-00213, 2017 WL 2581060, at *4 (W.D .La. 5/22/17) (quotations omitted) ("The statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process").

However, if a plaintiff is not brought before a neutral magistrate during his arrest/ detention, then prescription on his claims begins to run when he is released. For example, in *Clark v. Lafayette Police Department,* the plaintiff was arrested, detained for two days and then released. No. 6:18-CV-0058, 2018 WL3602974 (W.D. La. 7/11/18). He was not brought before a neutral magistrate at any point. Accordingly, the Western District found his "Section 1983 claim for false arrest and false imprisonment accrued when the plaintiff was released from jail and prescribed one year later." *Id.* at *4. Similarly, in *Thomas v. Gryder*, *supra*, the plaintiff filed suit under § 1983 for false imprisonment alleging he was illegally imprisoned for 589 days past the end of his actual sentence. Accordingly, the plaintiff was not detained due to legal process as he was supposed to be released earlier. As he was detained without legal process, prescription did not begin to run on his false imprisonment claim until he was released. *Id.* at *3.

This Court agrees with Defendants that the limitations period for Frank's claim for a § 1983 unlawful arrest or unlawful imprisonment began to run when he was detained pursuant to a legal process, which clearly was no later than October 23, 2014, when the judge found probable cause at a preliminary hearing. Thus, this suit filed on October 20, 2017, is untimely.

In the original Report and Recommendation, believing that Frank had been released on October 20, 2016, the Magistrate Judge found that suit filed on October 20, 2017, was timely, stating "the plaintiff argues his claim accrues on the date he was released, and the undersigned agrees." [Doc. 4l, page 45].

But after being provided Frank's actual release date of September 4, 2016, the Magistrate Judge issued the Supplemental and Amended Report and Recommendation to revise her original conclusion to find that Frank's claim is not prescribed because he may have experienced limits on his liberty even after he was released. [Doc.42, pages 42-49]. Relying on the Seventh Circuit's

decision in *Mitchell v. City of Elgin*, 912 F .3d 10l2 (7th Cir. 2019), the Magistrate Judge found that Frank "may have been detained or been seized even after he was released from jail," concluding that "[n]othing in the records submitted by the defendants show what other conditions, if any, were imposed by the Court upon plaintiff at the time of his release on bond." [Doc. 42, page 45].

The Seventh Circuit in *Mitchell* noted that pre-trial release "might" be a Fourth Amendment seizure, but the Court stated it was unable to decide the matter on the record before it: "[P]retrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty . . . On this record, however, we are unable to decide the matter." 912 F.3d at 1016, 1017.

Here, Frank's Amended Complaint does not include any allegations supporting a finding that he was still "detained" or "seized" after his release. Further, the Defendants supplied the public records regarding Frank's bond which establish that he was only required to appear in court and keep the peace:

> Now, therefore, if the said Stevenski Frank shall well and truly appear and answer to the said charge in open Court in and for the Parish of Evangeline, State of Louisiana, at 10:00A.M., on the 20 day of October, 2016, in accordance with, and as authorized by the order signed by the District Judge hereinbelow, and shall appear at each subsequent term of the said Court held for trial of such offenses as charged against the principal in this bond until his final trial under the charge aforesaid, then the obligation is to be null and void otherwise to remain in full force and effect. And in the meantime shall keep the peace towards the people of Louisiana and especially toward HONORABLE BOBBY JINDAL GOVERNOR. [Doc. 40-1].

The record establishes he was released under regular, routine, run-of-the-mill conditions. Thus, Frank does not allege he was "seized" following his release on bond and the pertinent public records do not support such a finding. "[R]un-of-the-mill conditions of pretrial release do

not fit comfortably within the recognized parameters of the term [seizure]." *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001).

The Magistrate Judge further noted that *contra non valentem* may also apply, finding "[t]he plaintiff has not had sufficient opportunity to argue how and to what extent the doctrine of *contra non valentem* might apply in the instant case. . ." [Doc. 42, pages 48-49].

Defendants assert that throughout this litigation, they have raised the issue of prescription in several pleadings. lDoc.27 -1, page 17; Doc. 30, page 16; Doc. 34- 1, page 1 91. Accordingly, Frank has had sufficient opportunity to raise and brief the issue if he wished. Further, Frank has amended his complaint since Defendants raised the issue of prescription and chose to not include any factual allegations regarding *contra non valenten*.

Louisiana recognizes four situations where *contra non valentem* applies: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff s action; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3)where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Marin v. Exxon Mobil Corp.*, 2009-2368, (La.10/l9/10), 48 So.3d 234, 245.

This Court agrees with Defendants. Frank did not include any allegations supporting any of these situations in his Amended Complaint. Further, it is well settled in the Fifth Circuit that "[t]he mere fact of imprisonment does not suspend the prescription period." *Williams v. Saltmachia*, No. 14-1428, 2015 WL 350266, at *3 (E.D. La. 1/26/15) (citing *McGuire v. Larpenter,* No. 14-30498, 2014 WL 6440383, at*2 (5th Cir. 2014)).

Accordingly, Frank's allegation that he was detained for two and one-half years is not sufficient to support the application of *contra non valentem*.

Further, there is no basis to apply *contro non valentem* after Frank was released on bail more than a year prior to filing suit. In *Roberts v. Wal-Mart Louisiana LLC*, No. 15-119, 2016 WL 6561523 (W.D. La. 11/2/16), Judge Doherty specifically rejected the plaintiff s arguments that her claims should be equitably tolled "as the plaintiff has not demonstrated she was prevented from filing her claims during the approximate four-year time period between the date she bonded out of the Vermilion Parish jail and the date she filed her claims." *Id*.at *5.

On a Motion to Dismiss, the Defendants do not have the burden to disprove the Plaintiff's allegations. Instead, the Plaintiff has the burden to allege facts supporting his claim. If there were restrictions on Frank's liberty once he was released on bond, then he needed to have alleged those restrictions.

As Frank has failed to do so, his Amended Complaint must be dismissed, as untimely.

**F.    State Law Claims**

Defendants urge the Court to dismiss any supplemental state law claims that may have been pled.  The Magistrate Judge stated she was unaware of any supplemental state law claims that were pled, and therefore recommended that the motion to dismiss supplemental state law claims be denied as moot.  This Court agrees.

**G.    Motion to Strike**

Defendants seek to strike all allegations related to the alleged constitutional rights violations of third parties, and specifically, to strike all references to the DOJ investigation into the VPPD's policy of using "investigative holds" as a police tool. Finding that the DOJ Report is

relevant to Frank's claims, and further having taken judicial notice of the Report itself, the Magistrate recommended that the motion to strike be denied.

Having determined that Frank's claims should be dismissed with prejudice, this Court finds that the motion to strike should be denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, the Court ADOPTS the Supplemental and Amended Report and Recommendation of the Magistrate Judge insofar as it recommends dismissal with prejudice of all claims against Mayor Vidrine in both her individual and official capacities; dismissal with prejudice of all claims against Chief Lartigue in his official capacity; and dismissal of any supplemental state law claims that may have been pled.

The Court DECLINES TO ADOPT the Supplemental and Amended Report and Recommendation of the Magistrate Judge insofar as it recommends that the motion to dismiss the claims against Chief Lartigue in his individual capacity should be denied;  insofar as it recommends that the motion to dismiss all claims against the City of Ville Platte should be denied; insofar as it recommends that the motion to dismiss the claim for punitive damages against Chief Lartigue in his individual capacity should be denied; insofar as it recommends that the motion to dismiss all claims as prescribed should be denied; and insofar as it recommends that the motion to strike be denied.

Accordingly, Defendants' Rule 12 Motion to Dismiss and Alternatively Motion to Strike Plaintiff's Amended Complaint [Doc. No. 34) is GRANTED.  Frank's claims are DISMISSED IN FULL WITH PREJUDICE.

Monroe, Louisiana, this 5th day of March, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**